**No. 51196.**—Protest 89885–K of Rubin Bros. Footwear (New York).

Mollison, Judge: The issues involved in this case were originally tried before this court and a decision was rendered, reported as *Rubin Bros. Footwear v. United States*, 13 Cust. Ct. 208, C.D. 895. The merchandise consisted of certain cowhide leather imported from Uruguay which was classified by the collector as "grained" cowhide leather and assessed with duty at the rate of 20 percent ad valorem under the provision therefor in paragraph 1530 (d), Tariff Act of 1930, as modified by the British Trade Agreement, T. D. 49753. Claims at lower rates under subparagraph (b) (4), (5), or (7) of the same paragraph, modified as described above, are made in the protest.

The decision referred to above was adverse to the plaintiff's claims, and was based upon a finding that a preponderance in weight of the evidence concerning certain samples introduced by plaintiff as representative of the merchandise established that the leather in issue had, prior to importation, been grained by a process called "boarding." The samples referred to were the official samples taken by the examiner at the time of appraisement.

Plaintiff thereupon moved for a rehearing on the ground that newly discovered evidence would tend to establish that a portion of the leather in question had, in fact, been boarded, and that the samples on which the controversy centered may have been withdrawn from that portion of the shipment. The motion was granted, over the opposition of counsel for the defendant, and upon the rehearing plaintiff offered further evidence which consisted chiefly of the deposition of the general manager of the exporter and the manager of the shoe factory in which the imported leather was ultimately used.

Testifying in response to interrogatories and cross-interrogatories propounded under a commission issued out of this court, Eduardo Lanza of Montevideo, Uruguay, identified the shipment in question as consisting of 60 bales of cowhide leather numbered 2692 to 2751, inclusive, shipped by the factory of which he was the manager to the plaintiff in this case. All handling of such cowhides, he said, was done under his personal supervision. About the time the hides in question were exported there were, according to Mr. Lanza, two distinct and separate stock piles kept by his firm, one consisting of smooth leather, and the other of hand-boarded leather. All of the leather covered by the shipment in question was taken from the former pile, he said, except bales Nos. 2712 to 2714, inclusive, which were taken from the hand-boarded pile. He specifically testified that the leather contained in bales Nos. 2692 to 2711 and 2715 to 2751 had not been subjected to any hand-boarding operation, while that contained in bales Nos. 2712 to 2714, inclusive, had been hand boarded.

The witness admitted that no records were kept which would corroborate his testimony as to the source and kind of leather involved in the various bales in question, and gave as the reason therefor that the difference was considered a matter of no great significance to his firm. He further stated that he remembered no special details, except the facts themselves, which would enable him to say which of the leather was smooth and which was hand boarded.

Jack Rubin, manager of the plaintiff's factory in Zanesville, Ohio, at the time of receipt and consumption of the leather in question, produced a motor carrier bill of lading containing data which identified the merchandise covered thereby as 54 of the 60 bales involved in this case. Mr. Rubin was shown to have had considerable experience in the handling of leathers of various kinds, and stated that upon personally checking the shipment he found that about 5 percent, or some 20 to 26 dozen cowhides, was grained or boarded leather, while the remainder was smooth side leather.

Examination of the summary sheet attached to the entry shows that six bales, Nos. 2692, 2699, 2708, 2712, 2725, and 2743, were designated by the collector to be opened and examined for the purpose of appraisement under section 499, Tariff Act of 1930. One of these bales was No. 2712, which is shown by the evidence and admitted by the plaintiff to have consisted of boarded leather. There is no direct evidence to show that the samples which were received in evidence as being representative of the shipment, which it will be remembered were official samples taken by the examiner, came from this particular bale, but we think it is a fair inference from a consideration of the record as a whole that such was the fact. Hence, it may be said that such samples were not representative of the entire shipment.

. The record establishes that the merchandise at bar was side upper leather, and we therefore sustain the protest claim for duty at the rate of 12½ percent ad valorem under the provision therefor in paragraph 1530 (b) (4) as modified by the British Trade Agreement, *supra*, as to the merchandise contained in bales Nos. 2692 to 2711 and 2715 to 2751. As to the remainder of the merchandise, that contained in bales Nos. 2712 to 2714, which the record establishes was, in fact, grained, the protest claims are overruled.

Judgment will issue accordingly.